UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DEREK W. PELTO,**

    **Petitioner,**

v.                                                       Case No: 6:15-cv-200-Orl-37DCI

**SECRETARY, DEPARTMENT OF CORRECTIONS and FLORIDA ATTORNEY GENERAL,**

    **Respondents.**
_____/

## ORDER

This case is before the Court on Petitioner Derek W. Pelto's Amended Petition for Writ of Habeas Corpus ("Amended Petition," Doc. 9) filed by counsel pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Amended Petition ("Response," Doc. 13) in accordance with this Court's instructions. Petitioner filed an Amended Reply to the Response ("Amended Reply," Doc. 21).

Petitioner asserts five grounds for relief. For the following reasons, the Amended Petition is denied.

### I. PROCEDURAL HISTORY

Petitioner was charged with first degree murder. (Doc. 14-1 at 4). A jury found Petitioner guilty of the lesser-included offense of second degree murder. (*Id.* at 10). The trial court sentenced Petitioner to life in prison. (*Id.* at 16). Petitioner appealed, and the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam*. (Doc. 14-4 at 247).

Petitioner, through counsel, filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, which he amended. (Doc. 14-5 at 2-122). The state

court denied the motion after a hearing. (Doc. 14-8 at 2-17). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (Doc. 14-9 at 194).

## II. LEGAL STANDARDS

### A. Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief

is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B.      **Standard For Ineffective Assistance Of Counsel**

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Ground One

Petitioner asserts counsel rendered ineffective assistance by misapprehending the burden of proof for an insanity defense. (Doc. 9 at 31). In support of this ground, Petitioner notes that counsel believed the burden of proof for an insanity defense required the State to prove beyond a reasonable doubt that Petitioner was sane, when in fact the instruction for the insanity defense had changed to require Petitioner to prove his insanity by clear and convincing evidence. (*Id.* at 31-35).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland* after an evidentiary hearing. (Doc. 14-8 at 3-7). The state court noted that Petitioner's counsel, Cheney Mason ("Mason"), testified that he would not have changed his strategy even if he had known the trial court would instruct the jury that the defense had to prove insanity by clear and convincing evidence. (*Id.* at 4). The state court further noted that Mason presented ample evidence to support an insanity defense, including the testimony of five experts - two psychiatrists, a neurologist, a forensic pathologist, and a neuropsychologist. (*Id.* at 5-6). The

state court concluded in light of the substantial evidence presented by Mason, no prejudice resulted from counsel's failure to know the proper burden of proof. (*Id*. at 6-7).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. At the evidentiary hearing, Mason testified that he has been a member of the Florida Bar since 1970, is board certified as a criminal trial specialist by the Florida Bar, and has tried more than 350 criminal cases. (Doc. 14-7 at 113-15). Although Mason believed a more favorable instruction for the defense was applicable, he said that he would not have done anything differently even if he thought the clear and convincing standard applied. (*Id*. at 119-20). Mason opined that he had met the burden of proof by presenting multiple experts who testified that Petitioner was insane at the time of the offense based on a frontal lobe injury. (*Id*.).

At trial, Dr. Michael Gutman, Dr. Elkhonon Goldberg, and Dr. Jeffrey Danziger testified that Petitioner was not able to control his actions at the time of the offense, and Drs. Gutman and Danziger opined Petitioner was insane at the time of the offense. (Doc. Nos. 14-2 at 232-33, 14-3 at 41-42, 139-40). In addition, those doctors and Dr. Michael Gebel and Dr. Anderson explained the severity of the head injury Petitioner received at the time of the offense and the impact of such an injury on cognitive function. *See id*.; *see also* Doc. 14-2 at 215, 220, 227, 231-33, 297-98, 314-15, 325, 343. Consequently, ample evidence was presented to support the defense of insanity. Moreover, Petitioner has not demonstrated that had counsel presented any additional evidence, as considered more fully in grounds two through four *infra,* that a reasonable probability exists the outcome of the trial would have been different. Accordingly, ground one is denied pursuant to § 2254(d).

B.     **Ground Two**

Petitioner contends counsel rendered ineffective assistance by interfering with his right to

testify. (Doc. 9 at 36). In support of this ground, Petitioner maintains that counsel erroneously advised him about the burden of proof for insanity and threatened to withdraw if Petitioner testified. (*Id*.). Petitioner contends that but for counsel's deficient performance, he would have testified regarding his state of mind and the events that occurred prior to the victim's murder. (*Id*. at 41-43).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief after an evidentiary hearing. (Doc. 14-8 at 7). The state court noted that Mason testified that (1) he discussed with Petitioner whether he should testify and Petitioner agreed it was not necessary and did not want to do so, (2) his strategy was to present Petitioner's version of the incident via the experts' testimony, and (3) he did not threaten to withdraw if Petitioner testified. (*Id*.). The state court determined that Mason succeeded in presenting Petitioner's version of events through the experts' testimony without calling Petitioner to testify, and the claim was without merit. (*Id*.).

Petitioner has not shown that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. In reviewing "the performance of experienced trial counsel, 'the presumption that [their] conduct was reasonable is even stronger.'" *Bradley v. United States*, No. 14-10463, 2017 WL 237581, at *3 (11th Cir. Jan. 19, 2017) (quoting *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000)). However, as recognized by the Eleventh Circuit:

> That is not to say that the performance of experienced counsel is above reproach. Even a Clarence Darrow can have a bad day. But our cases recognize that "the more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense" is reasonable. *Spaziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994) (quoting *Gates v. Zant*, 863 F.2d 1492, 1498 (11th Cir. 1989)).

*Id.*

Mason, an imminently experienced criminal defense attorney, testified that his strategy was

to present Petitioner's version of events through the testimony of Dr. Gutman and Dr. Goldberg in order to prevent a rigorous cross-examination of Petitioner by a "remarkably skillful" prosecutor. (Doc. 14-7 at 124-25). Mason testified that Petitioner agreed with this strategy and did not want to testify. (*Id.* at 126). Mason said he did not tell Petitioner that he would withdraw if he testified. (*Id.* at 127). Mason believed that Petitioner would have been convicted of first-degree murder had he testified. (*Id.* at 130).

At trial, Dr. Gutman and Dr. Danziger testified about what Petitioner told them occurred during the incident.[2] (Doc. Nos. 14-2 at 225-26, 14-3 at 127-31). In addition, Dr. Berns and Dr. Tressler, a psychiatrist and psychologist respectively called as witnesses by the State, testified about Petitioner's version of events. (Doc. 14-3 at 228-30, 246-47). Therefore, the jury heard what Petitioner said occurred at the time of the offense. Consequently, the Court cannot conclude that Mason's strategy was unreasonable.

To the extent Petitioner contends he could have provided more detailed testimony that would have rebutted *inter alia* the testimony of Sharon Ballou ("Ballou"), a crime scene and bloodstain pattern reconstruction expert, a reasonable probability does not exist that the outcome of the trial would have been different had he testified. Ballou admitted that from her examination of the crime scene, she did not know where Petitioner was when he was hit with a hammer or cut with a knife, who cut whom first, or whether Petitioner cut himself with a knife. (Doc. 14-4 at 18,

---

[2] Petitioner said that he told the victim she had to leave his apartment after which she cut herself with a knife. (Doc. Nos. 14-2 at 224-25, 14-3 at 127-28). Petitioner indicated that the victim cut his arm with the knife when he attempted to help her. (Doc. Nos. 14-2 at 225, 14-3 at 129). The victim subsequently hit Petitioner in the head with a hammer, Petitioner stabbed the victim with a knife, he attempted to call for help, and then Petitioner beat the victim to death with a hammer after he blacked out after being hit in the head. (Doc. Nos. 14-2 at 225-26, 14-3 at 129-31).

28, 30). Furthermore, Mason thoroughly cross-examined Ballou and established that very few of the blood samples recovered at the scene were tested, which weakened the reliability of her testimony. Finally, Petitioner's insanity defense was premised largely on his inability to remember what happened after being hit in the head. Had Petitioner testified and provided additional detail regarding the incident and explanation for his actions, he risked being vigorously cross-examined about his ability to remember such details despite his purported memory lapse. Therefore, the potential benefit to be gained from Petitioner testifying was minimal when weighed against the potential harm to his insanity defense through cross-examination.[3]

In sum, from the evidence presented, counsel made a reasonable strategic decision not to call Petitioner as a witness and Petitioner agreed with this decision. Moreover, counsel did not threaten to withdraw if Petitioner testified. Finally, no prejudice resulted from Petitioner's failure to testify. Accordingly, ground two is denied pursuant to § 2254(d).

### C. Ground Three

Petitioner asserts counsel rendered ineffective assistance by failing to call a blood spatter expert and biomechanics expert. (Doc. 9 at 45). In support of this ground, Petitioner contends that a blood spatter expert could have rebutted Ballou's testimony that the blood stains were inconsistent with Petitioner's version of events and a biomechanics expert could have established that it was virtually impossible for Petitioner to hit himself in the head with a hammer to cause the injuries he sustained. (*Id*. at 45-50).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief after a

---

[3] The Court further notes that Ballou was called as a rebuttal witness. Therefore, had Petitioner testified, he would have testified before her and likely would not have testified about blood located in specific locations such as the green arm chair. Consequently, it is speculative that Petitioner would have rebutted Ballou's testimony.

hearing. (Doc. 14-8 at 14-15). The state court determined that Mason considered calling experts, but made a strategic decision not to do so. (*Id*. at 15).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Mason testified that he considered calling a blood spatter and biomechanics expert but decided not to do so. (Doc. 14-7 at 136). Mason explained that he decided not to call a blood spatter expert because there was no dispute as to what happened - the apartment was covered in blood, there had been a running battle to the death, and Petitioner crushed the victim's skull by hitting her more than thirty times with a hammer. (*Id*. at 136-38).

At the evidentiary hearing, Stuart James ("James"), a blood spatter expert, testified that he did not believe the blood evidence was sufficiently detailed to conclude whether Petitioner's wounds were self-inflicted, whether Petitioner's version of events was inconsistent with the blood evidence, or whether Petitioner or the victim was injured first. (Doc. 14-6 at 115-17, 125). James further testified that more DNA testing should have been done to help determine the sequence of events. (*Id*. at 127-28). Similar to James' testimony, Ballou admitted that she did not know where Petitioner was when he was hit with a hammer or cut with a knife, who cut whom first, or whether Petitioner inflicted his injuries. (Doc. 14-4 at 18, 28, 30). Moreover, on cross-examination, Mason attacked Ballou's credibility by repeatedly establishing that only eleven blood samples were tested and that it was unknown to whom the blood belonged in most of the areas about which Ballou testified. (*Id*. at 11-19). Given that James and Ballou's testimony was largely consistent, that James could not confirm that the blood evidence supported Petitioner's version of events, and that Ballou was thoroughly cross-examined, Mason's decision not to call a blood spatter expert was a reasonable strategic decision. Likewise, prejudice did not result from his failure to do so.

With respect to a biomechanics expert, Mason testified that he spoke with Drs. Gutman,

Anderson, and Goldberg about whether Petitioner could have inflicted the injury to his head, and they all opined that depending on the amount of rage and adrenaline, it was possible. (*Id*. at 140). Mason said he chose not to call a witness to confirm that it was possible for Petitioner to inflict the injury. (*Id*. at 141, 143).

At the evidentiary hearing, James Isper ("Isper"), a biomechanics expert, testified that the injury to Petitioner's head could have been self-inflicted but would have required 150 pounds of force. (Doc. 14-6 at 165, 178). At trial, Mason elicited testimony from Dr. Anderson that it was highly improbable that an individual could self-inflict the fracture to Petitioner's skull and that he did not believe Petitioner's injuries were self-inflicted. (Doc. Nos. 14-2 at 350, 368). Likewise, Dr. Danziger testified that in his years of treating patients, he had never seen anyone hit himself with sufficient force to inflict an injury like the one to Petitioner's skull. (Doc. 14-3 at 183). In sum, none of the witnesses called at the evidentiary hearing or trial could exclude the possibility that Petitioner's skull injury was self-inflicted, but they all essentially agreed it was highly improbable. In light of the evidence, Mason made a reasonable strategic decision not to call a biomechanics expert, and a reasonable probability does not exist that the outcome of the trial would have been different had he done so. Accordingly, ground three is denied pursuant to § 2254(d).

### D. Ground Four

Petitioner maintains counsel rendered ineffective assistance by failing to move for a continuance after the trial court ruled that the defense had the burden of proving insanity by clear and convincing evidence. (Doc. 9 at 51). According to Petitioner, counsel should have requested a continuance in order to pursue the options of calling Petitioner, a blood spatter expert, and a biomechanics expert. (*Id*.).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief after a

hearing. (Doc. 14-8 at 16). The state court concluded that Mason presented multiple experts to support an insanity defense and made strategic decisions not to call Petitioner or blood spatter and biomechanics experts to testify. (*Id.*).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. As discussed *supra,* Mason presented ample evidence to support an insanity defense and made reasonable strategic decisions not to call Petitioner and a blood pattern or biomechanics expert. Furthermore, a reasonable probability does not exist that the outcome of the trial would have been different had counsel sought a continuance and subsequently presented this evidence. Accordingly, ground four is denied pursuant to § 2254(d).

### E. Ground Five

Petitioner contends that the insanity instruction violated his right to due process because it failed to instruct the jury that it must determine whether the prosecution established beyond a reasonable doubt the defendant's requisite state of mind for murder. (Doc. 9 at 52-55). Petitioner raised this ground on direct appeal. (Doc. 14-4 at 185-86). The Fifth DCA affirmed *per curiam.* (*Id.* at 247).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. The presumption of innocence requires the government to prove "beyond a reasonable doubt each element of the offense charged, including the mental element or *mens rea*." *Clark v. Arizona*, 548 U.S. 735, 766 (2006) (citations omitted). Nevertheless, states may require defendants to bear the burden of proving insanity by a preponderance of the evidence or to a greater degree. *Id.* at 769.

In the instant case, the trial court instructed the jury that the State bore the burden of proving each element of the offense, including *mens rea*, beyond a reasonable doubt. (Doc. 14-4 at 118-

20). The trial court then instructed the jury Petitioner had the burden of proving by clear and convincing evidence that he was insane, *i.e.,* had a mental infirmity, and as a result, did not know what he was doing or its consequence or although he knew what he was doing and its consequence, he did not know it was wrong. (*Id*. at 121-22). The trial court subsequently reiterated that the presumption of innocence remains with Petitioner "as to each material allegation in the Indictment through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt[,]" and the State has to overcome the presumption of innocence by proving guilt beyond a reasonable doubt. (*Id.* at 126). Consequently, the jury was advised that the State had to prove the requisite state of mind beyond a reasonable doubt. Petitioner has not shown that the insanity instruction served to negate this instruction. Accordingly, ground five is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. The Amended Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.
2. Petitioner is **DENIED** a Certificate of Appealability.
3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on May 18th, 2017.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record